C. F. SHULTZ, Assignee, etc., Appellant, *v.* JOHN J. SUTTER, Respondent.

**December 4, 1876.**

1. A corporation, under the statute of Missouri, has the power to make assignment of its property and effects.

2. A corporation may make an assignment of a call already due on a stock note, but cannot commit to an assignee the discretion of making future calls on the stock notes of its members.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

*Phillips & Stewart,* for appellant, cited: Hill on Trust., Am. notes, 73; Abb. Dig. 43; Haxtun *v.* Bishop, 3 Wend. 13; DeRuyter *v.* St. Peter's Church, 3 Barb. Ch. 119; *s. c.,* 3 N. Y. 238; Lennox *et al. v.* Roberts, 2 Wheat. 373; State of Maryland *v.* Bank of Maryland, 6 Gill & J. 205; *Ex parte* Conway *et al.,* 4 Ark. 302; Town *v.* Bank of River Raisin, 2 Dougl. (Mich.) 530; Robbins *v.* Embry, 1 Smed. & M. Ch. 207; Hopkins *et al. v.* Gallatin Turnpike Co., 4 Humph. 403; Grand Gulf Bank *v.* The State, 10 Smed. & M. 428; Warner *v.* Mower, 11 Vt. 385; Dana *v.* Bank of United States, 5 Watts & S. 223; Flint *v.* Clinton County, 12 N. H. 401; Pope *v.* Brandon, 2 Stew. 401; Ang. & Ames on Corp., 9th ed., sec. 187, p. 158; 1 Rev. Laws N. Y. 1813, p. 248; 1 Rev. Stat. N

Y. 1835, p. 603; 1 N. Y. Stat. at Large, 2d ed., pp. 557, 558, secs. 9, 10; Hill v. Reed, 16 Barb. 280; Hurlburt v. Carter, 21 Barb. 221; Bowery Bank Case, 5 Abb. Pr. 416; Carter v. Leavitt, 15 N. Y. 9, 109, 138, 198; Rev. Code Ala. 1867, sec. 1776; Rev. Stat. Mich. 1837–1838, p. 230, secs. 8, 9; Rev. Stat. Mich. 1839–1840, p. 94, Act No. 56; Gibson et al. v. Goldthwaite, 7 Ala. 281; Draper et al. v. Emerson, 22 Wis. 147; The State et al. v. Macon County Court, 41 Mo. 463; Skouten v. Wood, 57 Mo. 380; Green's Brice's Ultra Vires, Am. ed. 1875, pp. 124 129; In re Sankey Brook Coal Co., Law Rep. 1 Eq. 721; In re International Life Assurance Soc., Law Rep. 10 Eq. 312; Pickering et al. v. The Ilfracombe R. R. Co., Law Rep. 3 C. P. 235; Wag. Stat. 150, 288, 293.

*Slayback & Haeussler*, for respondent, cited: Beaty v. Knowles, 4 Pet. 152; Perrine v. Chesapeake & Delaware Canal Co., 9 How. 172; Russell v. Topping, 5 McLean, 194; Caldwell v. City of Alton, 33 Ill. 416; Strauss v. Eagle Ins. Co., 5 Ohio St. 59; The People v. Utica Ins. Co., 15 Johns. 358; New York Fireman's Ins. Co. v. Ely, 2 Cow. 678; s. c., 5 Conn. 560; Halstead v. Mayor of New York, 3 N. Y. 430; Wag. Stat., ch. 37, arts. 1, 6, secs. 1, 21; Green's Brice's Ultra Vires, 1875, pp. 128, 129; Burrill on Assignments, 2d ed., 623; Gibson v. Goldthwaite, 7 Ala. 293; Beasly v. Farmers' Bank, 12 Pet. 137, 138.

GANTT, P. J., delivered the opinion of the court.

Shultz, on May 7, 1875, filed a petition in the St. Louis Circuit Court, setting forth that the Western Savings Bank, a duly incorporated institution, did, on March 12, 1875, by deed duly executed and recorded, assign to him all its property and effects; that defendant had subscribed for ten shares of the capital stock of this bank, of the aggregate par value of $1,000, of which he had paid $100 in cash, and for the residue, or $900, had given his note, payable at such times and in such manner as should be determined by the board of directors, with 10 per cent. interest. This note

was dated October 6, 1873. That the board, on April 13, 1874, ordered payment of 10 per cent. on each share of the stock, making $100 payable by defendant, whereof he was duly notified; that on August 3, 1874, the board made in like manner another call for $100, or 10 per cent. on its stock, and notified defendant thereof; that another similar call was made on October 6, 1874, and notice of it given to the defendant; that defendant has neglected all these calls, and has paid no money on account of them. Each call and its neglect by defendant were set out separately in different counts.

To this petition a demurrer was filed, assigning for causes:

" 1. That it did not appear that the bank had power to make an assignment.

" 2. That it appears from the petition that this is an action for installments on stock, which are not assignable."

The court sustained this demurrer; plaintiff declined to amend; final judgment was given, and the case comes here by appeal.

Two questions are presented: First, had the bank power to make an assignment? If so, did this power extend to the subject of this action?

1. We think the bank had power to make an assignment. It is conceded that no prohibition of the assignment is to be found in our statutes, unless in section 21 of article 1 of chapter 37 of Wagner's Statutes, page 293. It is claimed that this section does impliedly make this prohibition.

It declares that, upon the dissolution of any corporation, etc., the president and directors or managers at the time of its dissolution, by whatever name they may be called, shall be trustees of the corporation, with full power to settle its affairs, collect its debts, and divide the net proceeds among the stockholders.

This is not a new provision in our legislation. It first appears in the revision of 1825. If the views of the respond-

ent are correct, for more than fifty years corporations have been under a disability to make assignments in Missouri.

The subject of assignments was first regulated by statute in Missouri in 1845. It was then declared that, "in all cases where any *person* shall make a voluntary assignment of his lands, etc., to any person in trust for his creditors, etc., it shall be the duty of the assignee," etc. Rev. Code 1845, ch. 10, sec. 1, p. 127.

At page 697 of the same revision it is declared by section 10 of chapter 101 that, "when any subject-matter, party, or person is described or referred to by words importing the singular number or the masculine gender, several matters and persons, females as well as males, and bodies corporate as well as individuals, shall be deemed to be included."

Whence it follows that the General Assembly, in 1845, contemplated the making of a voluntary assignment by a corporation ; and the restraining force imputed to the section above quoted from the chapter concerning corporations must be denied.

The section which appears in Wagner's Statutes of 1872 as section 21, page 293, is found in the Revised Code of 1825 as section 8, page 225. In the Revised Code of 1835 it is section 15, pages 126, 127, and in Revised Code of 1845 it is section 24, page 236, of article 1, chapter 34.

It appears that this provision was borrowed by us from the New York Code ; that it has there been claimed that it operated to inhibit an assignment by a corporation, and that such an effect was repudiated by the Court of Appeals of New York. *DeRuyter* v. *St. Peter's Church*, 3 Comst. 238, citing 3 Barb. Ch. 124 ; and *Haxtun* v. *Bishop*, 3 Wend. 13. This alone would be decisive of the controversy, but we prefer to support our action by the practice of our own State government.

2. We think that there is nothing to prevent the assignment of a call already due on a stock note. It has been

decided that a corporation cannot commit to an assignee the discretion of making future calls on the stock notes of its members ; and, hence, the portion of such stock notes which has not been ordered to be paid is non-assignable by a corporation. But so much of the stock note as has been called for ought to have been paid when the stockholder was notified of the call. His neglect to pay it perhaps materially contributed to the embarrassed condition of the company, and made the assignment necessary. The obligation or debt existing by virtue of the note and this call was precise and unequivocal ; and, if *any* debt can be transferred by a corporation to its assignee, it is not easy to support an exception in respect of a debt of this character. Green's Brice's Ultra Vires, 128, 129, and notes.

It may be objected that, if we thus hold, we must also rule that *part* of a chose in action may be assigned without the consent of the debtor, which has been declared to be inadmissible, both by the Supreme Court of the United States and the Supreme Court of Missouri. *Mandeville* v. *Welch*, 5 Wheat. 277 ; *Love* v. *Fairfield*, 13 Mo. 300. But there are two answers to this objection. In the first place, the rule declared rests upon the impropriety and injustice of subjecting a debtor to several actions in respect of one obligation ; which would be done if, in the language of Judge Ryland (13 Mo. 305), a demand " were divided into numerous parts, and each part assigned to a different individual." This he justly pronounces to be an oppressive proceeding, to which the debtor, without his own consent, could not be subjected. But why will such a proceeding be oppressive? Because each of the assignees may harass the debtor by a separate suit, to the enormous accumulation of costs and the great encouragement of champerty and maintenance. 13 Mo. 306.

In the case of *Mandeville* v. *Welch*, 5 Wheat. 277, the same reasons are stated by Mr. Justice Story for the same rule. It is plain that the assignment in the case before us,

if effectual at all, transfers to the assignee the whole cause of action in respect of this stock-note which existed at the date of the assignment, and so, the reason for the supposed rule failing, the rule itself does not apply. "*Cessante ratione, cessat quoque lex.*" In the second place, it may be remarked (and this is, indeed, only a corollary from what has just been said), there is no transfer, by reason of the deed of assignment, of that part of the stock note which has *not* been called in ; and, in respect of that part, there is no right of action in favor of whomsoever until a call has been made, or a payment ordered, according to its tenor. When this call is made, or this payment ordered, it will be time enough to determine to whom the money called for is payable, or to whom the right of action on it belongs.

All the judges concurring, the judgment is reversed and the cause remanded.